UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DORIS HOPP,

      Plaintiff,

v.                             CASE NO.  8:12-CV-485-T-17TBM

AETNA LIFE INSURANCE
COMPANY, et al.,

      Defendants.

_____/


ORDER

This cause is before the Court on:


Dkt. 24    Motion for Summary Judgment
Dkt. 25    Statement of Undisputed Facts
Dkt. 26    Certificate of Compliance
Dkt. 27    Notice of Filing of Administrative Record
Dkt. 28    Motion for Summary Judgment
Dkt. 29    Statement of Undisputed Facts
Dkt. 30    Certificate of Compliance
Dkt. 33    Memorandum in Opposition
Dkt. 34    Response to Statement of Undisputed Facts
Dkt. 35    Plaintiff's Statement of Disputed Facts
Dkt. 36    Memorandum in Opposition
Dkt. 40    Order
Dkt. 41    Response to Order

This case is an ERISA case.  In the Complaint, Plaintiff Doris Hopp seeks a judgment against Defendants Aetna Life Insurance Company and Bank of America Corporation, finding that Plaintiff is entitled to Short Term Disability benefits from November 23, 2010 through May 24, 2011, awarding $18,172.68 for those benefits, with pre-judgment interest on each monthly payment from the date due until the date paid, awarding reasonable attorney's fees and costs, and other appropriate relief.

Case No. 8:12-CV-485-T-17TBM

The parties have filed cross-motions for summary judgment.   Defendants seek entry of summary judgment against Plaintiff Doris Hopp as to all claims.  Defendants argue that Aetna's decision to deny benefits is not "wrong."  Defendants further argue that, if the Court concludes that Aetna's decision is wrong, the decision to deny benefits still had a reasonable basis, and therefore was not arbitrary and capricious. Accordingly, the Court should enter summary judgment in favor of Defendants.

Plaintiff Hopp seeks entry of summary judgment against Defendants.  Plaintiff Hopp identifies the following issues:

1.  Whether Aetna's decision to deny benefits was wrong (i.e. was Hopp disabled within the meaning of the Plan);

2.  Whether Aetna was properly delegated discretionary authority by BOA;

3.  Did Aetna have discretionary authority over claims decisions when it decided Hopp's claim;

4.  Whether the court's inquiry must end and judgment must be granted to Hopp because Aetna's decision was wrong and it did not have discretionary authority.

I.  Standard of Review

A.  Rule 56

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c).

2

Case No. 8:12-CV-485-T-17TBM

> "The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson, 477 U.S. at 248.  But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted."  Id. at 249-50.

The Court notes the discussion in Curran v. Kemper Natl. Servs., Inc., 2005 WL 894840 *7 (11th Cir. 2005)(unpublished) and Crume v. Met. Life Ins. Co., 417 F.Supp.2d 1258 (M.D. Fla. 2006).   While there may be unresolved factual issues evident in the administrative record, ....unless the administrator's decision was wrong, or arbitrary and capricious, these issues will not preclude summary judgment as they normally would. Pinto v. Aetna Life Ins. Co., 2011 WL 536443 (M.D. Fla. Feb. 15, 2011).   Conflicting evidence on the question of disability alone cannot create an issue of fact precluding summary judgment, since an administrator's decision that rejects certain evidence and credits conflicting proof may be reasonable.   417 F.Supp.2d at 1273.

## B.  ERISA

In reviewing a plan administrator's benefits decision, the Court performs the following analysis:

3

Case No. 8:12-CV-485-T-17TBM

(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

See Blankenship v. Met. Life Ins. Co., 644 F.3d 1350, 1354 (11th Cir. 2011)(citing Capone v. Aetna Life Ins. Co., 592 F.3d 1189, 1195 (11th Cir. 2010)).

The Court's review of an ERISA benefits decision is "limited to consideration of the material available to the administrator at the time it made its decision."  Blankenship v. Met. Life Ins. Co., 644 F.3d 1350, 1354 (11th Cir. 2011)(citing Jett v. Blue Cross and Blue Shield of Alabama, Inc., 890 F.2d 1137, 1140 (11th Cir. 1989).

Case No. 8:12-CV-485-T-17TBM

II.  Statement of Facts

1.    Plaintiff Doris Hopp worked as a Home Services Specialist II, processing mortgage refinancings.  Her work hours were from 9 a.m. to 6:00 p.m., 5 days a week. Plaintiff's job was classified as a "sedentary" position.  Plaintiff had a "high level of underwriting authority."   (Dkt. 27-1, p. 5).

2.   Plaintiff Hopp sought treatment from Dr. Richard Timmons on 11/18/2010. Plaintiff treated with Alice Savage, MS, LMHC, CAP, Best Life Counseling, on 12/8/2010, 12/15/2010 and 1/5/2011.  Plaintiff treated with Dr. Gustavo J. Cuadra on 2/2/2011, 3/2/2011, 3/23/2011, and 4/20/2011; there is an additional prescription note from Dr. Cuadra dated 5/16/2011.  Dr. Timmons is Plaintiff's primary care physician.  Dr. Cuadra is a psychiatrist.  Plaintiff saw Alice Savage, MS, LMHC, CAP through Bank of America's Employee Assistance Plan.

3.   Bank of America offers a Group Benefits Program to employees that is comprised of component plans.  (Dkt. 41-1).  The Bank of America Associate Handbook 2010 identifies the component plans that are subject to ERISA and outlines the employee's rights under each component plan.  (Dkt. 1-3, pp. 12-18).

4.   Bank of America's Group Benefits Program incorporates the summary plan description of the STD Plan as an expression of the substantive provisions of the STD Plan.  (Dkt. 41-1, p. 14).

5..   The Bank of America Associate Handbook 2010 explains how to obtain Plan documents ("**Receiving information about each of your component plans and benefits**", (Dkt. 1-3, p. 13)) and further provides:

Case No. 8:12-CV-485-T-17TBM

**Plan documents**

The Group Benefits Program and each component plan are based on an official plan document.  Each component plan's summary plan description is a summary of the more important plan features.  This summary supersedes and replaces any prior communications, policies, rules, practices, standards and/or guidelines to the contrary, whether written or oral.  You can find the full component plan details in the official plan documents.  If a component plan provision described in this summary disagrees with the official plan document, the wording of the official plan document always governs.  For information about how to obtain a copy of a plan document, **see Receiving information about each of your component plans and benefits above.**

(Dkt. 1-3, p. 14).

6.  The Bank of America Associate Handbook 2010 identifies the plan administrator of the Group Benefits Program:

**Plan administrator**

The plan administrator of the Group Benefits Program and each component plan is the Bank of America Corporation Corporate Benefits Committee, which is appointed by the Compensation and Benefits Committee of the Board of Directors of Bank of America Corporation.  As plan administrator, the Corporate Benefits Committee is responsible for overall administration of the Group Benefits Program and each component plan.

The Associate Handbook 2010 provides contact information for the plan administrator. (Dkt. 1-3, p. 14.)

7.  In the chapter entitled **ERISA Information** (Dkt. 1-3, p. 12), the Bank of America Associate Handbook 2010 states that "[t]he **Leaves of Absence, Disability, and Workers' Compensation** chapter, the **Leaving Bank of America** chapter, and this chapter comprise the summary plan description for the Bank of America Short-term

6

Case No. 8:12-CV-485-T-17TBM

Disability Plan, a component plan of the Group Benefits Program."

8.   As to Short-term Disability, the Bank of America Associate Handbook 2010 provides:

**Purpose**

Bank of America provides time off from work and benefits that replace a portion of income if you are disabled, up to a maximum of 26 weeks from the date of your disability, as determined by the Short-term Disability (STD) Claims Administrator and a treating health care provider.  For purposes of determining eligibility for STD benefits, disabled is defined as your inability to perform your essential occupation functions, including working your regularly scheduled hours, for more than seven consecutive calendar days because of a pregnancy, illness, injury, non-elective surgery or hospitalization.

**Eligibility**

**.......**

An associate must be receiving appropriate care and treatment on a continuing basis from an eligible treating health care provider while on STD.

A treating health care provider is defined as a legally licensed Medical Doctor, Advanced Practice Registered Nurse (APRN), Nurse Practitioner (NP) and/or a Physician Assistant (PA) who is treating the associate for a medical condition.

Appropriate care and treatment must meet the following conditions:

It is received from an eligible health care provider listed above whose medical training and clinical experience are suitable for treating the disability

It is necessary to meet basic health needs and is of demonstrable value

It is consistent in type, frequency and duration of treatment

Case No. 8:12-CV-485-T-17TBM

> with relevant guidelines of national medical, research and health care coverage organizations and government agencies
>
> It is consistent with the diagnosis of the condition
>
> It has the purpose of maximizing medical improvement

Non-psychiatrist health care providers may provide treatment for up to 30 days for behavioral health or substance abuse conditions.

Bank of America reserves the right to request a second opinion as a condition of benefit continuation.  Benefits are payable, after the seven day elimination period, as long as the disability continues, for up to 26 weeks.  After 26 weeks of continuous disability, an associate may be eligible to apply for Long-term Disability (LTD) benefits.

**Applying for STD benefits**

First, contact your manager and follow the specific requirements of your line of business (LOB) regarding reporting a leave of absence.

Second, contact the STD Claims Administrator to initiate a claim within 15 calendar days of the date of disability.  Aetna is the STD Claims Administrator for Bank of America.  Contact Aetna at **1.877.444.1012**.

......

Third, you or your health care provider must submit any required supporting medical documentation within 15 calendar days of contacting the STD Claims Administrator to initiate your claim.  Although the STD Claims Administrator will contact the treating health care provider, it is your responsibility to ensure the treating health care provider provides the requested information to the STD Claims Administrator.  Failure to provide the requested medical information within 15 calendar day period may result in a denial of the claim and a lapse in benefits.

**Note:**  Bank of America system access is revoked on the effective date of your leave.

**Extension of Short-term Disability**

Case No. 8:12-CV-485-T-17TBM

During an approved period of STD and prior to the expected return to work date, if you are within the 26-week STD period maximum and would like to extend the STD, you should contact your manager to provide an updated anticipated return date.  In addition, you should contact the STD Claims Administrator to request an extension of your STD period.

**Benefit payments**

You will receive benefit payments through the regular payroll process.  All deductions, including required contributions for health and insurance coverage, 401(k) contributions, tax withholdings and garnishments will continue.  Employer-paid STD benefits are considered taxable income.

(Dkt. 1-2, p. 1).

9.  The Bank of America Associate Handbook 2010 states:

**Claiming your benefits**

The Bank of America Corporation Corporate Benefits Committee, as plan administrator, has delegated to the Pay and Benefits Escalation Team, the Benefits Appeals Committee and insurance companies or service providers discretionary authority to determine eligibility for benefits and construe the terms of the applicable component plan and resolve all questions relating to claims for benefits under the component plan.  If you think you are eligible for a certain benefit from any component plan, but believe you are not receiving that benefit, you must submit a claim to receive that benefit.

.......

**Appealing a denied claim for benefits**

Requests to review denied claims (appeals) for group health plans, Short-term Disability, and all insured benefits under the Group Benefits Program should be directed to the insurance company or service provider that insures or administers the applicable component plan at the address listed on the notice of claim denial.  For the other component plans under the Group Benefits Program requests to review denied claims (appeals) should be directed to the Bank of America Benefits Appeals Committee.

Case No. 8:12-CV-485-T-17TBM

(Dkt. 1-3, p. 15).

10.   The Bank of America Associate Handbook 2010 identifies what the STD Plan does not cover, (Dkt. 1-2, p. 2), including:

> "If you fail to have a physical examination and/or provide satisfactory objective evidence of disability or continuing disability or other information requested by the STD Claims Administrator."

11.   Bank of America Corporation's Short Term Disability ("STD")  plan is funded by Bank of America.   (Dkt. 1-3, p. 18).  Aetna, STD Claims Administrator,  determines eligibility for STD benefits and, if granted, Bank of America pays the benefits.   (Dkt. 41-1. pp. 57, 70).

12.   Bank of America provides Medical Leave to associates who do not meet the eligibility requirements for Short Term Disability benefits.  The unpaid time off is first funded with occasional illness days and sickness benefit days, if applicable.   (Dkt. 27-3, p. 15).

13.   Aetna is the Leaves Administrator for Bank of America.  (Dkt. 27-3, p. 18).

14.   Plaintiff requested FMLA leave on 11/22/2010.  (Dkt. 27-5, p. 31).

15.   As of 1/18/2011, Aetna denied FMLA leave for 11/23/2010-12/7/2010 due to incomplete supporting documents (no return-to-work date on certification form.) (Dkt. 27-5, pp. 27, 29, 33).

16.   Aetna approved FMLA leave for Plaintiff Hopp for 12/8/2010 through 2/28/2011. (Dkt. 27-5, p. 8).  Aetna deemed Plaintiff's FMLA leave exhausted as of

Case No. 8:12-CV-485-T-17TBM

2/28/2011.

17.  Aetna approved Bank of America Medical Leave ("BACMED") for 12/8/2010 through 2/28/2011, and from 3/1/2011 through 5/31/2011.  (Dkt. 27-5, p. 8).

18.  Plaintiff returned to work on 6/1/2011 with no restrictions.  (Dkt. 27-3, p. 65; Dkt. 27-5, pp. 2-3).

19.  Aetna denied Plaintiff's Short Term Disability Claim on 12/17/2010:

STD Benefits Are Not Paid in the Following Circumstance(s):

If you fail to have a physical examination and/or provide satisfactory objective medical evidence of disability or continuing disability or other information requested by Aetna.

Our records indicate we have not been able to collect the information needed due to lack of response from your health care providers.  Your provider, Dr. Richard Timmons, submitted clinical information on 12/7/10 in the form of Attending Physician Statement in attempt to provide the needed clinical information to support your claim.  The information lacked the observed symptoms that would directly prevent you from performing duties of your occupation as a Home Services Specialist II.  While the provider indicated anxiety and stress the information lacked how frequency/duration/intensity of your symptoms, would prevent [you] from doing your job.

The information submitted does not provide the needed clinical information to indicate that you would be unable to perform the duties of your occupation.

In order to substantiate an inability to perform the core elements of your occupation as a Home Services Specialist II, from a psychological perspective, your provider would have to submit examination findings which document the presence of impairments.  Examples of such findings would be behavioral observations, including the frequency, duration and intensity of symptoms observed, the results of a formal mental status examination, or any performance-based tests of psychological functioning

11

Case No. 8:12-CV-485-T-17TBM

with standardized scores.

We will review any additional information you submit, such as medical information from any medical providers who have treated you for the condition(s) in question, including but not limited to:

> A detailed narrative report for the period 11/23/2010 through current, outlining specific physical and/or mental limitations and restrictions related to your disability claim

> Your treating medical provider's prognosis, including the current course of treatment, frequency of visits, and specific medications prescribed

> Copies of diagnostic studies conducted during the above period, such as test results, X-rays, laboratory data, and clinical findings

> Any documents or information specific to the condition(s) for which you are claiming disability and which would assist in the evaluation of your disability claim

> Any other information or documentation you believe may assist us in reviewing your claim

(Dkt. 27-3, pp. 3-4).

20.  On 1/4/2011, Plaintiff Hopp appealed Aetna's decision to deny STD benefits.

21.  At the conclusion of the appeal, 5/27/2011, Aetna again denied Plaintiff's claim for STD benefits.  (Dkt. 27-2, pp. 41-46.

22.  Health insurance is a separate component plan of Bank of America's Group Benefits Program.  Aetna Policy GP-721040 is a Group Life and Accident and Health Insurance Policy, issued on January 6, 2009.   (Dkt. 34-1, p. 11).

Case No. 8:12-CV-485-T-17TBM

23.  The Employee Assistance Program ("EAP") is a component plan of the Group Benefits Program.  The Employee Assistance Program offers counseling and referral services.  Bank of America funds the Employee Assistance Program, and Aetna is the plan administrator.  (Dkt. 1-3, p. 18).  The EAP "provides unlimited confidential telephonic consultations and up to three face-to-face counseling sessions per issue.  EAP can help with life's challenges, stressful situations and mental health issues."  (Dkt. 27-3, p. 19).


III.  Discussion


A.  Standard of Review


The parties disagree as to the standard of review that applies to Defendant Aetna's  decision to deny STD benefits to Plaintiff Hopp.


Plaintiff Hopp argues that the language in the SPD is not sufficient to sustain a finding of discretionary authority, in light of Cigna Corp. v. Amara, 131 S. Ct. 1866 (2011)(summary plan descriptions provide communication with beneficiaries about the plan but ...their statements do not themselves constitute the terms of the plan).  Plaintiff Hopp argues that Defendants have not met their burden of establishing Defendants are entitled to deferential review because they have not produced a plan document properly delegating discretion to Aetna.   Plaintiff Hopp further argues that there is no plan document which established a procedure for delegating discretion.


Defendants respond that Plaintiff Hopp brought suit under the SPD attached to Plaintiff's Complaint, which states that Aetna had discretionary authority to determine eligibility for benefits, and, based on other cases involving Defendants, Defendants did

13

Case No. 8:12-CV-485-T-17TBM

not believe that Aetna's discretionary authority was in dispute.  Defendants have also offered a copy of the applicable Group Life and Accident Health Insurance Policy, which provides that Aetna has discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits.

In Cigna Corp. v. Amara, 131 S.Ct. 1866 (2011), Cigna changed its pension plan from a defined benefit plan to a cash balance plan.  Respondents challenged the adoption of the new plan, contending that Cigna did not give them proper notice of the changes to their benefits.  The District Court determined that Cigna's disclosures violated Cigna's ERISA obligations, reformed the plan and directed Cigna to pay benefits accordingly.  The Supreme Court agreed to determine whether the District Court applied the proper standard, "likely harm," in determining whether Cigna's notice failures caused sufficient injury to Respondents to warrant legal relief.   The Supreme Court first considered whether Sec. 502(a)(1)(B) authorized the relief the District Court provided, and found that it did not.  The Supreme Court noted that Sec. 502(a)(3) authorizes equitable relief, and the standard to be applied depends on the equitable relief provided.  The Supreme Court outlined the equitable principles the District Court might apply on remand.

In the course of determining that Sec. 502(a)(1)(B) did not authorize the relief the District Court provided, the Supreme Court rejected the Solicitor General's argument that the plan includes the disclosures that constitute the summary plan descriptions. The Supreme Court noted that Sec. 102(a), which obliges plan administrators to furnish summary plan descriptions, by its syntax suggests that the information about the plan provided by the disclosures is not itself part of the plan.   The Supreme Court also considered the division of authority between the plan sponsor and the plan administrator, and the intended objective of summary plan disclosures, which is "clear, simple communication."  The Supreme Court expressed that making the summary plan disclosures legally binding might lead plan administrators to sacrifice simplicity and

14

Case No. 8:12-CV-485-T-17TBM

comprehensibility for in order to describe plan terms in the language of lawyers.  Taking

all of the above reasons together, the Supreme Court concluded that summary

documents provide communication with beneficiaries about the plan but that their

statements do not themselves constitute the terms of the plan for the purposes of Sec.

502(a)(1)(B), and further found that the District Court could not find authority in that

section to reform Cigna's plan as written.


In the Introduction to **ERISA Information**, the Bank of America Associate

Handbook 2010 states that:


> The Group Benefits Program is, and is treated as, a single
> welfare benefit plan solely for purposes of annual report
> (Form 5500) filings and the determination of whether an
> eligible retiree is entitled to the COBRA premium reduction
> provided under the American Recovery and Reinvestment
> Act of 2009, as amended.  For all other purposes under
> ERISA, the Internal Revenue Code, COBRA, HIPAA, the
> Patient Protection and Affordable Care Act, as amended,
> and any other applicable legal requirements, each
> component plan is, and is treated as, a separate plan.

(Dkt. 1-3, p. 12).  The Court notes the following provisions in the Group Benefits Plan:

1) Introduction (Dkt. 41-1, p. 6);  2) First Amendment (Dkt. 41-01, p. 72);  3) Second

Amendment (Dkt. 41-1, p. 90).


The Bank of America Associate Handbook 2010 indicates that the SPD is

intended to fulfill the statutory requirement that all plan beneficiaries receive an

understandable explanation of the benefits available to them.  The SPD is required to

be "sufficiently accurate and comprehensive to reasonably apprise such participants

and beneficiaries of their rights and obligations under the plan."  See 29 U.S.C. Sec.

1022(a).  The SPD states that "The Group Benefits Program and each component plan

are based on an official plan document...You can find full component plan details in the

Case No. 8:12-CV-485-T-17TBM

official plan documents." (Dkt. 1-3, p. 15). The SPD specifically provides that, in the event a component plan provision described in the summary disagrees with the official plan document, the wording of the official plan document always governs. (Dkt. 1-3, p. 15). The SPD states that the provisions of summary plan description do not establish enforceable employee rights, contractual or otherwise, and do not establish an employment relationship enforceable by associates. (Dkt. 1-3, p. 12).

In this case, there is no disputed issue as to the adequacy of the SPD, whether an inadequate SPD caused harm to Plaintiff warranting the award of legal relief, whether there are terms in the SPD that are not present in the Plan or whether the SPD misrepresents the provisions of the plan.  After reviewing the terms of the Group Benefits Plan, the Court recognizes that in this case the SPD functions both as the SPD, a summary of significant terms of the SPD provided to participants, and, as incorporated in the Group Benefits Plan, an expression of the substantive provisions of the STD Plan. The Court considers the official plan document of the STD Plan to be the Group Benefits Plan, and the incorporated SPD.

The Court has examined the terms of the Group Benefits Program. (Dkts. 41-1, 41-2). Article VII of the Group Benefits Program, Administration, outlines in detail the powers of the Plan Administrator. (Dkt. 431-1, pp. 32-35). Article VIII, Claims and Review Procedures, outlines in detail the authority of the Claims Administrator, the authority of the Plan Administrator, and claims procedures for determinations of disability and appeals of denied claims. (Dkt. 41-1, pp. 36-47).  The Plan Administrator delegates to the Claims Administrator acting under Par. 8.1(a) the authority of the Plan Administrator as provided under Sections 7.1(b)(1) through (6). (Dkt. 41-1, p. 36).

The Group Benefits Plan provides that the Plan Administrator has the power to delegate its discretionary power to control and manage the operation and administration of the Plan, to delegate to Claims Administrators the authority to make claims

Case No. 8:12-CV-485-T-17TBM

determinations with the same discretion as the Plan Administrator, and to allocate among its members or Employees its responsibilities under the Plan.  (Dkt. 41-1, pp. 32-33).   The Plan Administrator may assign to a Claims Administrator issues of whether an individual is eligible to participate in or obtain coverage under, or whether an eligible individual is enrolled for participation in, or coverage under, a component plan.  (Dkt. 41-1, p. 36).  The Group Benefits Program identifies the Plan Administrator, and the Claims Administrator for the STD Plan.  (Dkt. 41-1, p. 70, p. 87, p. 118).


The Court notes that the Summary Plan Description ("SPD") provides that the Bank of America Corporation Corporate Benefits Committee has delegated to the service provider, Aetna, discretionary authority to determine eligibility for benefits, construe the terms of the STD plan, and resolve all questions relating to claims for benefits under the component plan.   This language is sufficient for the Court to find that deferential review is appropriate.


The Court finds that Aetna, the claims administrator, had discretion to determine eligibility for benefits, to construe the terms of the STD Plan and to resolve all questions relating to claims for benefits under the STD Plan.  Therefore, the Court will review the decision of the administrator under the arbitrary and capricious standard of review. Under this standard, the Court determines whether there is rational support in the record for Defendants' determination that Plaintiff was not disabled because of illness or injury so that Plaintiff was unable to perform all of the essential functions of her job.

B.  Plaintiff's  Claim for STD Benefits


Under ERISA, the plaintiff has the burden of showing she is entitled to benefits under the terms of the Plan.  Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998).   The SPD defines "disabled" as the claimant's inability to perform

Case No. 8:12-CV-485-T-17TBM

the claimant's essential occupation functions, including working the claimant's regularly
scheduled hours, for more than seven consecutive calendar days because of a
pregnancy, illness, injury, non-elective surgery or hospitalization.

Indicia of arbitrary and capricious decisions may include lack of substantial
evidence, procedural irregularities, a mistake of law, bad faith and conflict of interest by
the fiduciary. Sandoval v. Aetna Life and Cas. Ins. Co., 967 F.2d 377 (10th Cir. 1992);
Rekstad v. U.S. Bancorp, 451 F.3d 1114, 1119-20 (10th Cir. 2006); Adams v. SBC
Communications, Inc., 200 Fed. Appx. 766, 771-774 (10th Cir. 2006).

At the outset, the Court notes that there is no structural conflict of interest. Bank
of America funds the Short Term Disability Plan, and Aetna, a third party administrator,
determines eligibility for benefits and otherwise resolves all claim issues. Pinto v.
Reliance Standard Life Ins. Co., 214 F.3d 377, 383 (3d Cir. 2000).

1. Substantial Evidence

The SPD states that "satisfactory objective medical evidence of disability" is
required. Plaintiff's STD claim was opened on 11/23/2010; Plaintiff's last day of work
was 11/22/2010. In describing what prevented Plaintiff from working, Plaintiff stated:

> "Why out of work: very busy job high demand, lot of volume
> of loans and there is no way you can close 7 loans a week,
> job very stressful. I was trying to work overtime to keep up
> with the volume and it's impossible, my husband is ill with
> cancer and my mother died Nov. 6th."

(Dkt. 27-1, p. 16).

Plaintiff was an established patient with Dr. Timmons. The medical records of

Case No. 8:12-CV-485-T-17TBM

Dr. Timmons show that on 11/18/2010, on physical examination, Plaintiff was alert and
oriented times 3 [time, place and person], and was in no acute distress, but crying at
times.  (Dkt. 27-4, p. 21).  The records indicate that Plaintiff lost eight pounds between
the last office visit in September, 2010 and 11/18/2010, and Plaintiff reported difficulty
sleeping.  Plaintiff expressed that Plaintiff was working overtime, and Plaintiff would like
to work in a different branch of the bank.  The office notes state "The bank suggested
that [Plaintiff] take a leave of absence but from an employment perspective that's not
[Plaintiff's] best option."  (Dkt. 27-4, p. 21).  Dr. Timmons prescribed citalopram, 20 mg.
a day, and alprazolam .25 mg., twice daily as needed.  In the form dated 12/3/2010
(Dkt. 27-4, pp. 17-19), Dr. Timmons responded "Yes" to the question "Is the employee
unable to perform any of his/her job functions due to the condition?" stating "She claims
her employer instructed her to take time off because her emotional state will not allow
her to perform her job."  (Dkt. 27-4, p. 17).  In describing the relevant medical facts
related to the condition "for which the employee seeks leave," Dr. Timmons states
"stress related to Husband's illness and
mother's recent death."  (Dkt. 27-4, p. 17).  Dr. Timmons recommended a follow-up
appointment in January, or a psychiatric evaluation.  (Dkt. 27-5, p. 36).

On 12/17/2010, Aetna notified Plaintiff Hopp that the clinical information
submitted` by Dr. Timmons "lacked the observed symptoms that would directly prevent
[Plaintiff] from performing the duties of [Plaintiff's] occupation as a Home Services
Specialist II.  While the provider indicated anxiety and stress the information lacked how
frequency/duration/intensity of symptoms would prevent [Plaintiff] from doing [her] job."
(Dkt. 27-3, p. 3).  Aetna further states:

> The information submitted does not provide the needed clinical
> information to indicate that you would be unable to perform the duties of
> your occupation.
>
> In order to substantiate an inability to perform the core elements of your

Case No. 8:12-CV-485-T-17TBM

> occupation as a Home Services Specialist II, from a psychological
> perspective, your provider would have to submit examination findings
> which document the presence of impairments.  Examples of such findings
> would be behavioral observations, including the frequency, duration and
> intensity of symptoms observed, the results of a formal mental status
> examination, or any performance based tests of psychological functioning
> with standardized scores."

(Dkt. 27-3, p. 3).

Aetna notified Plaintiff Hopp that Aetna would review additional information

Plaintiff submitted, including:

> A detailed narrative report for the period 11/23/2010 through current,
> outlining specific physical and/or mental limitations and restrictions related
> to your disability claim;
>
> Your treating medical provider's prognosis, including current course of
> treatment, frequency of visits and specific medications prescribed;
>
> Copies of diagnostic studies conducted during the above period, such as
> test results, X-rays, laboratory data, and clinical findings;
>
> Any documents or information specific to the condition(s) for which you
> are claiming disability and which would assist in the evaluation of your
> disability claim;
>
> Any other information or documentation you believe may assist us in
> reviewing your claim.

(Dkt. 27-3, p. 4).

Aetna's request for clinical information which documents the presence of

impairments shows that Aetna was seeking clinical information to document the severity

of any impairment of Plaintiff's ability to function in the workplace.   (Dkt. 27-2, p.

19)("documentation reviewed does demonstrate that condition is severe enough to

prevent [Plaintiff] from performing occupational duties").  In the Provider Certification

from, the only condition Dr. Timmons identified  is "Stress related to Husband's

condition and mother's death."  Dr. Timmons' office notes also indicate "anxiety with

Case No. 8:12-CV-485-T-17TBM

normal grief reaction, and anxiety related to a great deal of stress on multiple fronts."
The diagnosis of "stress" or "anxiety," even if severe, is not a diagnosis of an anxiety
disorder. Even if that diagnosis were a diagnosis of the presence of a psychiatric
disorder, a diagnosis alone is not sufficient to establish that Plaintiff was disabled i.e.
could not perform the essential functions of her occupation.  Dr. Timmons' records do
not contain any finding that Plaintiff could not perform her job, aside from  the alleged
instruction from Plaintiff's employer that Plaintiff take a leave of absence.

      The fact that Plaintiff's claim for short term disability benefits was based on
treatment for symptoms of severe stress rather than a physical impairment does not
alter the plan's requirement of objective evidence.    Defendant Aetna must take into
account Plaintiff's subjective reports of fatigue [or other subjective complaint], Stiltz v.
Metropolitan Life Ins. Co., 244 Fed. Appx. 260, 264-65 (11th Cir. 2007), but may also
consider the extent to which objective medical evidence supports or contradicts
Plaintiff's subjective reports. Wangenstein v. Equifax, 191 Fed. Appx. 905, 911-12 (11th
Cir. 2006).  In this case, Aetna was not seeking an unreasonable level of objective
evidence that could never be provided.  Stiltz v. Metropolitan Life Ins. Co., 244 Fed.
Appx. 260 (11th Cir. 2007).

      To the extent that Dr. Timmons' determination that Plaintiff was unable to
perform an essential function of Plaintiff's job is based on Bank of America's alleged
instruction to Plaintiff that Plaintiff take a leave of absence, Dr. Timmons' determination
is not based observed symptoms or behavior that prevented Plaintiff from performing
the essential functions of Plaintiff's job.   Aetna, as the Leaves Administrator, rather
than the employer, Bank of America, had the discretion to approve FMLA leave and
BACMED.  Plaintiff applied for both FMLA leave and BACMED, and both were granted
by Aetna based on standard
FMLA Certification forms furnished by Plaintiff's health care providers.

      Plaintiff appealed the denial of STD benefits on 1/4/2011.  Aetna considered
additional documentation from Alice Savage, LHMC, CAP and from Dr. Gustavo Cuadra

21

Case No. 8:12-CV-485-T-17TBM

in evaluating Plaintiff's claim on appeal.  (Dkt. 27-2, pp. 44-46).

The records from Ms. Savage show that the cognitive testing performed on 12/8/2010 and 1/5/2011 was within normal limits.  (Dkt. 27-3, pp. 80, 90); Plaintiff was able to perform some memory functions, but unable to perform the memory function of "unrelated words after five minutes."   The records of 12/15/2010 reflect that "[Plaintiff's] employer told [Plaintiff] to go on short term disability."  (Dkt. 27-3, p. 89).   Plaintiff's emotional functioning was described as "crying- -depressed- -anxious- -stressed- -bereavement,"  with 2-3 minutes of panic attacks whenever the phone rings at work. The behavioral symptoms observed included crying, wringing hands and pressured speech.  (Dkt. 27-3, pp. 80, 88).   The records indicate that Plaintiff did not have suicidal ideation on 12/8/2010, and 1/5/2011  (Dkt. 27-3, pp. 90, 93, 97).

As of 1/5/2011, Plaintiff was able to perform ADLs (activities of daily living). Activities of daily living typically include activities such as feeding onself, bathing, dressing, grooming, work, homemaking and leisure.   The medical records indicate a significant weight loss and sleep disturbances, but Plaintiff did not have socialization problems, could clean/maintain her residence, operate a motor vehicle, do routine shopping and pay bills. (Dkt. 27-3, p. 100).

Ms. Savage diagnosed Plaintiff with an adjustment disorder with mixed anxiety and depressed mood (309.28).  (Dkt. 27-3, p. 93).  Ms. Savage noted a GAF of 63 on 12/8/2010 and a GAF of 60 on 1/5/2011.

"The Global Assessment of Functioning (GAF) scale is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults.  *See* Am. Psychiatry Ass'n Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000)."  See Reid v. Metropolitan Life Ins. Co., 944 F.Supp.2d 1279, 1319 (N.D. Ga. 2013).  A range of 61-70 indicates some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational or school functioning.  A range of 51-60 indicates

22

Case No. 8:12-CV-485-T-17TBM

moderate symptoms (e.g. flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning).

Dr. Cuadra performed a mental status exam on 2/2/2011, which was within normal limits; at that time memory was "intact," and attention/concentration, comprehension, insight and judgment were "good." Dr. Cuadra noted a depressed mood. (Dkt. 27-3, p. 70). Dr. Cuadra diagnosed "major depression, single episode, mild" and prescribed Prozac and Klonopin. In further treatment, the dosage of Prozac was increased from 20 mg. daily to 40 mg. and then to 60 mg. daily. (Dkt. 27-3, pp. 67-70). Initially, Dr. Cuadra indicated a GAF of 50. A GAF of 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g. no friends, unable to keep a job, cannot work). Dr. Cuadra performed additional mental status exams on 3/2/2011 and 4/20/2011 which showed Plaintiff's mental status to be "generally linear and relevant." In the records, Dr. Cuadra notes no suicidal or homicidal ideation and no psychosis.

The Court has reviewed the Administrative Record. The medical records of Plaintiff's entire course of treatment include some indications that Plaintiff's impairment was not severe, and other indications that Plaintiff's impairment was very severe. For example, as reported by Plaintiff, the phone range constantly at work, with each call precipitating a brief panic attack, putting Plaintiff in a constant state of turmoil. Plaintiff did not have the same difficulties outside of the workplace.

Plaintiff Aetna sought objective medical evidence that documented the severity of Plaintiff's impairment, as required by the STD plan, and denied the STD claim initially and after appeal when Aetna concluded that the objective medical evidence provided did not establish that Plaintiff could not perform essential duties of her job for the period 11/23/2010 to 6/1/2011. Defendant Aetna explained in detail the how Defendant Aetna made the initial determination, and how Defendant Aetna made the final determination after reviewing Plaintiff's claim on appeal.

Case No. 8:12-CV-485-T-17TBM


2.  Procedural Irregularities


a.  FMLA and BACMED Benefits


Plaintiff argues that Aetna took inconsistent positions when Aetna granted Plaintiff's request for leave, but denied short term disability benefits.


Inconsistent decisions in awarding benefits can be a factor in determining whether a decision is arbitrary and capricious.   Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 118-19 (2008).


Plaintiff was granted both FMLA and BACMED benefits.  FMLA benefits are awarded based solely on information provided in a certification form, filed by an appropriate health care provider.  See 29 C.F.R. Sec. 825.306(b).  The certification is sufficient if it contains the following: "1)  The date on which the serious health condition commenced; 2) the probable duration of the condition; 3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; [...and] 4)(B) for the purposes of leave under Sec. 2612(a)(1)(D) of this title, a statement that the employee is unable to perform the functions of the position of the employee..."  See 28 U.S.C. Sec. 2613.  Under FMLA regulations, Aetna can ask only for information contained within the certification form.  29 C.F.R. Sec. 825.306(b).


BACMED is intended to provide unpaid time off for "associates who do not meet the eligibility requirements for [STD] benefits."  STD benefits are granted when an associate is disabled under the plan, in accordance with the definition noted above. The STD benefit plan requires physical examination and/or satisfactory objective medical evidence of disability, a requirement not required for eligibility for FMLA leave or BACMED.   The applicant for BACMED must apply within fifteen days of the date the medical condition commenced,  must provide the date last worked, the date first treated for the medical condition, the nature of the medical condition and expected return to

Case No. 8:12-CV-485-T-17TBM

work date, and the name, address and telephone number of the treating health care provider.   (Dkt. 41-2, p. 8).

The FMLA leave provisions indicate that FMLA leave ends when the claimant or family member no longer has a qualifying condition under the provisions of Family Care Leave policy, a determination to be made by the Leaves Administrator.  (Dkt. 41-2, p. 6).  BACMED leave provisions indicate that BACMED ends when: "1) [a claimant is] no longer considered to be unable to work by [the claimant's] treating health care provider and the Leaves Administrator; 2) when [a claimant is] capable of performing the essential functions of [the claimant's] occupation; 3) when [a claimant] fails to have a physical examination and/or provide[s] satisfactory objective medical documentation of continuing medical condition when requested by the Leaves Administrator......."

Granting FMLA leave and BACMED is not necessarily inconsistent with the denial of STD benefits, since FMLA leave and BACMED can be approved in the absence of objective medical evidence that prevents an applicant from performing essential functions of the applicant's work, and based only on certifications from the applicant's health care provider.

b.  Selective Review of Records

Plaintiff argues that Plaintiff went to the EAP Professional that Bank of America sent Plaintiff to, but Aetna disregarded that provider's opinion.

In general, an Employee Assistance Program is intended to provide early assessment of individual problems, short-term counseling for problems that affect an employee's work performance, and referral services.  The Court notes that Aetna agreed to consider the information provided by Alice Savage, MS, LMHC, CAP.    Ms. Savage, as an "MS, LMHC, CAP" is qualified by education and experience to offer therapy and psychological testing and evaluation.  The Court understands Ms. Savage to have the following credentials: Master of Science, Licensed Mental Health Counselor,

Case No. 8:12-CV-485-T-17TBM

Certified Addiction Professional.  The SPD for the STD Plan specifies that:

> A treating health care provider is defined as a legally licensed Medical
> Doctor, Advanced Practice Registered Nurse (APRN), Nurse Practitioner
> (NP) and/or a Physician Assistant (PA) who is treating the associate for a
> medical condition.

Ms. Savage is not within any of the categories specified in the SPD for the STD Plan.

Ms. Savage provided three one-hour sessions of counseling, and did not have the

benefit of an established patient relationship.    As to the three authorized EAP

sessions, the therapy offered by Ms. Savage filled the gap until Plaintiff could arrange

an appointment with a psychiatrist, which Plaintiff explained to Aetna could not be done

until mid-January. ( Dkt. 27-1, p. 32).  A clinical psychologist is within the definition of

health care provider for the purposes of FMLA leave.  (Dkt. 41-2, p. 14).   Since FMLA

leave and BACMED leave run concurrently, the certification of Ms. Savage was

sufficient for both types of leave.   (Dkt. 41-2,. 9).   Plaintiff's FMLA leave was approved

through 2/28/2011, at which time it was exhausted,  and Plaintiff's BACMED was

approved through 6/7/2011.  (Dkt. 27-5, p. 23).  The Court understands that the

approval of BACMED through 6/7/2011 was based on the Certification of Ms. Savage.

(Dkt. 27-3, p. 84).


    Based on the administrative record, the Court understands that Plaintiff's

supervisor referred Plaintiff to the Employee Assistance Plan.  It is not clear to the Court

why it was not possible for Plaintiff to obtain medical treatment for Plaintiff's serious

health condition in December, 2010 rather than February, 2011 (Dkt. 27-1, p. 32); the

sessions with Ms. Savage were offered under a benefit plan separate from Plaintiff's

medical insurance.


    The Court notes that Plaintiff had already applied for STD benefits and for a

leave of absence by the time Plaintiff met with Ms. Savage.  Plaintiff's last day of work

Case No. 8:12-CV-485-T-17TBM

was 11/22/2010, and the first meeting with Ms. Savage was on 12/8/2010.  The Provider Certification forms completed by Ms. Savage were sufficient for the purpose of Plaintiff's leave, but the STD Plan requires satisfactory objective medical evidence of functional impairment.    The records of Ms. Savage indicate that Plaintiff's cognitive functioning was, for the most part, within normal limits, but Plaintiff's emotional functioning was such that Ms. Savage recommended that Plaintiff not work and would need additional treatment.  (Dkt. 27-3, pp. 80-85).


Rather than disregard the opinion of Ms. Savage, Aetna accepted it for the purpose of FMLA leave and BACMED.  The opinion of Ms. Savage was not sufficient for the purpose of STD benefits, where satisfactory objective evidence is necessary.    The behavioral observations of extreme distress conflict with the essentially normal mental status exams from 12/8/2010 through 1/5/2011.  It was reasonable for Aetna to seek additional evidence to understand Plaintiff's functional impairment during the relevant time period.

c.  Reliance on Opinions of Non-Examining Physicians

Plaintiff argues that Aetna did not reasonably rely on the opinions of two non-examining doctors to the exclusion of substantial evidence in the record to determine that  was not Plaintiff disabled.

In some cases, a consistent diagnosis of a condition that cannot be quantifiably measured, e.g. chronic pain syndrome, along with consistent observations of physical manifestations of the condition may become objective evidence.   Oliver v. Coca-Cola Co., 497 F.3d 1181, 1196 (11th Cir. 2007).   The records of Dr. Timmons, Ms. Savage and Dr. Cuadra are consistent in that all document Plaintiff's high level of stress, and high level of anxiety.  Ms. Savage and Dr. Cuadra documented Plaintiff's depressed

Case No. 8:12-CV-485-T-17TBM

mood.   However, the only limitation noted by Dr. Timmons as to  Plaintiff's ability to perform her job is that Plaintiff's employer instructed Plaintiff to take time off because Plaintiff's emotional state would not allow her to perform her job.  (Dkt. 27-5, p. 35). This opinion is not based on Dr. Timmons' behavioral observations, including the frequency, intensity and duration of observed symptoms, a mental status exam, or a performance-based test of psychological functioning with standardized scores.   The only symptom Dr. Timmons observed was that Plaintiff was crying at times; otherwise the records of Dr. Timmons indicate a discussion of the multiple stressors in Plaintiff's life, and the alternatives Plaintiff wanted to pursue.

As discussed above, the records of Ms. Savage indicate substantially normal cognitive function, but also indicate severe emotional distress.   Dr. Cuadra did not submit any Provider Certifications for the period of time before 2/2/2011,(Dkt. 27-4, p. 46), or during the time Dr. Cuadra treated Plaintiff.   In assessing Plaintiff on 2/2/2011, Dr. Cuadra initially set a GAF of 50, indicating severe impairment such that the patient could not work, but in Dr. Cuadra's records there is no specific observed symptom or finding that explains what job function Plaintiff could not perform.    The mental status exams that Dr. Cuadra performed were substantially within normal limits, with the exception of depressed mood.

The Court notes that a review was conducted by Antoinette Acenas, M.D. (Board-certified in psychiatry) in March, 2011 (Dkt. 27-3, pp. 72-75), and by Randy Rummler, M.D. (Board-certified in psychiatry) in May, 2011 (Dkt. 27-3, pp. 59-62). There was a telephone peer-to-peer consultation with Dr. Cuadra on 3/11/11; repeated attempts to reach Ms. Savage were made without success, and the review was completed without consultation with Ms. Savage.  Dr. Acenas' review states:

> Based on the provided documentation and telephonic
> consultation with Dr. Cuadra from 11/23/2010 to 4/4/2011,

Case No. 8:12-CV-485-T-17TBM

> the claimant has no psychiatric impairment that would
> preclude  her from performing her customary sedentary job
> as a Home Service Specialist II......Claimant's mental status
> examinations consistently were within normal limits in all of
> her office visits with providers, which would indicate that the
> claimant has no psychiatric impairment.
>
> ......
>
> Based on the review of the provided documentation and
> telephonic consultation with Dr. Cuadra, restriction or
> limitation imposed by the treating provider was reviewed and
> in my profession (sic) judgment it is not appropriate.  The
> return to work imposed by the treating provider is
> undetermined and the claimant has no psychiatric
> impairment that would translate to this restriction and
> limitation, nor preclude her from performing her usual
> sedentary job from 11/23/2010 through 4/4/2011.

(Dkt. 27-3, p. 74).

After the completed report was faxed to Ms. Savage, on 5/12/2011, Ms. Savage

contacted Aetna by telephone and stated she would be willing to participate in a

telephone peer to peer consultation.   Since Dr. Cuadra provided additional information

on 5/18/2011, a second review was performed to incorporate the new information and to

afford Ms. Savage the opportunity to participate in a telephone peer to peer

consultation.  After repeated attempts to reach Ms. Savage by telephone were not

successful, the review was completed without additional input from Ms. Savage.  (Dkt.

27-2, pp. 44-45).  The reviewer, Dr. Rummler,  concluded that the medical records did

not establish the presence of severe or significant psychiatric impairment, that the

restrictions and limitations imposed were not appropriate and that there was no

evidence of adverse side effects of medication.

An administrator may not refuse to credit reliable evidence, but is not required to

accord special weight to the opinions of a claimant's treating physician.  <u>Black & Decker</u>

Case No. 8:12-CV-485-T-17TBM

Disability Plan v. Nord, 538 U.S. 822 (2003).  In this case, the independent experts were not required to physically examine Plaintiff, and their failure to do so does not render their opinions invalid.   See Richey v. Hartford Life and Accident Ins. Co., 608 F.Supp.2d 1306, 1312 (M.D. Fla. 2009) ("An ERISA administrator is entitled to rely on the opinion of a qualified consultant who neither treats nor examines the claimant, but instead reviews the claimant's medical records.").  See also Watts v. Bellsouth Telecommunications, Inc., 218 Fed. Appx. 854 (11th Cir. 2007)(report of peer reviewer properly considered; plan put burden of proof on claimant, objective evidence is implicit requirement); Pinto v. Aetna Life Insurance Company, 2011 WL 536443 (M.D. Fla. 2/15/2011)(unreported).

Defendant Aetna considered all the evidence, but accorded greater weight to the opinions of Drs. Acenas and Rummler, who reviewed the evidence and concluded it did not support an impairment of such severity that Plaintiff was precluded from working.

d.  Requirement of Objective Evidence

Plaintiff  argues that Aetna did not evaluate the impact of the limitations Plaintiff's health care providers documented or the restrictions Plaintiff reported due to her symptoms on Plaintiff's ability to perform the material duties of Plaintiff's occupation.

Plaintiff was employed as "Home Service Specialist II."   The Administrative Record reflects that this included processing mortgage refinancings (Dkt. 27-1, p. 16) , underwriting conventional and government files, that Plaintiff had a high level of underwriting authority and authority to access all of Bank of America's software systems.  (Dkt. 27-1, p. 5).  The job is classified as sedentary.  (Dkt. 27-1, p. 9).  Plaintiff reported the job as having a high volume of loans, attempting to close seven loans a week, and working overtime to keep up with the demand.   (Dkt. 27-1, p. 16).

Case No. 8:12-CV-485-T-17TBM

Dr. Timmons' records do not indicate the job function that Plaintiff could not perform, aside from presence at work during regularly scheduled hours. (Dkt. 27-5, p. 42). The records of Ms. Savage state that the job function that Plaintiff is unable to perform is "unable to focus." (Dkt. 27-3, p. 83.). The Court understands this to refer to a deficiency in concentration. When Ms. Savage tested Plaintiff's concentration, Plaintiff could maintain her concentration. Ms. Savage estimated a continuous period of incapacitation from 11/10 -6/11, and that Plaintiff would require follow-up treatment on a weekly basis. (Dkt. 27-3, p. 84). Ms. Savage further states that, as to the frequency of flare-ups, and duration of related incapacity that the patient may have over the next six months, is "Every day." The Administrative Record indicates that Dr. Cuadra advised Plaintiff she could not return to work some time prior to 5/3/2011 (Dkt. 27-2, p. 22) and Dr. Cuadra cleared Plaintiff to attempt a return to work at full capacity without restriction on 6/1/2011. (Dkt. 27-3, p. 65). Dr. Cuadra does not indicate what job function Plaintiff could not perform in a Provider Certification form or in his progress notes.

After Defendant Aetna explained what was lacking in the initial report of Dr. Timmons, Plaintiff was afforded the opportunity to provide additional records which documented the severity of Plaintiff's impairment. There was a conflict in the evidence as to the severity of Plaintiff's functional impairment. When a plan requires claimants to provide objective medical evidence, an administrator's decision to deny benefits for failure to produce such evidence is reasonable, even though such evidence might be impossible to obtain for that condition. When the plan has no such requirement, however, the Court evaluates the reasonableness of the decision in light of the sufficiency of the claimant's subjective evidence and the administrator's actions. Creel v. Wachovia Corp., 2009 WL 179584 (11th Cir. 2009). In this case, the STD Plan requires objective evidence. Defendant Aetna did not arbitrarily refuse to consider reliable evidence. Aetna considered all of the medical evidence, but found it was not sufficient to establish that Plaintiff's impairment was so severe that she could not

Case No. 8:12-CV-485-T-17TBM

perform the essential duties of her job from 11/23/2010 to 6/1/2011.

e.  Absence of IME

Plaintiff  argues that it was not reasonable for the administrator not to send
Plaintiff for an independent medical examination where a psychiatric claim was present
that encompasses inherently subjective complaints.

Other courts have held that it is not per se an abuse of discretion to opt for a file
review rather than an IME, but it is a factor to be weighed in the overall assessment of
the decision-making process.  Glenn v. MetLife, 461 F.3d 660, 671 (6th Cir. 2006)(citing
Calvert v. Firstar Finance Co., 409 F.3d 286, 295 (6th Cir. 2005).   In Blankenship v.
Metropolitan Life Ins. Co., 644 F.3d 1350, 1357 (11th Cir. 2011), the Eleventh Circuit
Court of Appeals found that the use of a file review rather than an IME did not count as
evidence that administrator acted arbitrarily and capriciously, particularly in the absence
of other troubling evidence.  In Blankenship, the Eleventh Circuit Court of Appeals cites
Bennett v. Kemper Nat'l Servs., Inc., 514 F.3d 547, 554 (6th Cir. 2008)(nothing
inherently objectionable about file review by qualified physician).

In this case, the Court has not found any other procedural irregularities that raise
a red flag, and therefore the absence of an IME does not persuade the Court that
Aetna's decision to determine Plaintiff's claim without the benefit of an IME was arbitrary
and capricious.

f.  Full and Fair Review

Under ERISA, a claimant is entitled to a "full and fair review" of an adverse
benefit determination.  The procedures required for administrative review are set forth in
29 C.F.R. Sec. 2560-503-1.  Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241,

Case No. 8:12-CV-485-T-17TBM

1245 (11th Cir. 2008). A claimant must be afforded at least one administrative appeal of an adverse benefit decision. 29 C.F.R. Sec. 2560-503-1(h)(1). A claimant must generally exhaust available administrative remedies under the plan before filing an ERISA lawsuit.

In this case, Plaintiff was granted additional time to provide records, and had the benefit of a review of her claim by a different person who was not involved in the initial adverse claim determination. The appeal process was tolled to permit Plaintiff's health care providers to provide additional documentation.

The Court concludes that Aetna afforded Plaintiff a full and fair review of the decision to deny STD benefits to Plaintiff.

III.  Conclusions

A.  Defendant's Motion for Summary Judgment

Bank of America delegated discretion to Aetna to determine eligibility for STD benefits, as well as to determine claims. The Court concludes that Defendants' decision to deny STD benefits to Plaintiff Hopp was not "wrong"; if the decision is found to be "wrong," the decision to deny STD benefits was reasonable. The Court therefore grants Defendants' Motion for Summary Judgment.

B.  Plaintiff's Motion for Summary Judgment

In determining the standard of review, the Court examined the Plan documents, and found that Defendant Bank of America delegated discretion to Defendant Aetna. The Court has concluded that Aetna's decision to deny STD benefits to Plaintiff Hopp was not wrong. The Court therefore denies Plaintiff's Motion for Summary Judgment.

33

Case No. 8:12-CV-485-T-17TBM

Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment is **granted**, and
Plaintiff's Motion for Summary Judgment is **denied**.  The Clerk of Court shall enter a
final judgment in favor of Defendants Aetna Life Insurance Company and Bank of
America Corporation and against Plaintiff Doris Hopp.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this
4th day of March, 2014.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record